## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**DENICIA V. ROBERTS**                                              **PLAINTIFF**

**v.**                               **Case No**. **4:20-cv-00216-KGB**

**MARK BERRY,** *et al.*                                          **DEFENDANTS**

## <u>ORDER</u>

Before the Court is the motion for leave to amend the complaint of plaintiff Denicia V. Roberts (Dkt. No. 18). Defendants Mark Berry and Mark McKinnon, in their official capacities, and the Arkansas Department of the Military f/k/a the Arkansas Military Department ("AMD") (collectively "Defendants") have responded and oppose Ms. Roberts' motion for leave to amend (Dkt. No. 26). Also before the Court is Ms. Roberts' motion to compel Defendants to produce certain documents; Defendants' response in opposition to Ms. Roberts' motion to compel; Defendants' motion to compel; Ms. Roberts' response to Defendants' motion to compel; and Defendants' reply to Ms. Roberts' response to motion to compel (Dkt. Nos. 20; 22; 27; 28; 29). Also before the Court is Defendants' motion for summary judgment (Dkt. No. 30). In an Order dated August 23, 2021, the Court continued the time in which Ms. Roberts had to respond to the motion for summary judgment until 14 days after the Court rules on Ms. Roberts' pending motion to amend her complaint (Dkt. No. 34).

For the following reasons, the Court grants Ms. Roberts' motion for leave to amend complaint (Dkt. No. 18). The Court grants, in part, and denies, in part, Ms. Roberts' motion to compel Defendants to produce certain documents (Dkt. No. 20). The Court grants, in part, and denies, in part, Defendants' motion to compel (Dkt. No. 22). Because the Court grants Ms.

Roberts' motion for leave to amend complaint, the Court denies as moot Defendants' currently pending motion for summary judgment (Dkt. No. 30).

## I.      Facts

In her complaint, Ms. Roberts alleges that she held the position of painter supervisor at AMD in April 2019, when AMD hired Johnny Rodgers as a painter and placed Mr. Rodgers under her direct supervision (Dkt. No. 1, ¶¶ 9-10).  Ms. Roberts complains that "[f]rom the beginning Mr. Rodgers rendered the relationship unworkable" and that Mr. Rodgers "threatened" her by telling her that "he had 'friends' and would get her [Roberts] fired." (*Id*., ¶ 10).  Ms. Roberts claims that she was subject to discrimination in the terms and conditions of her employment and unjustly terminated from her employment based on her age, race, and sex (*Id*.).  She further claims that she was subject to discrimination in the terms and conditions of her employment and unjustly terminated from her employment "in retaliation for her exercise of rights guaranteed her under the Constitution of the United States of America, specifically her right to speak out on matters of public concern" and in retaliation for her exercise of rights guaranteed her under Title VII, "all in violation" of Title VII, 42 U.S.C. §§ 2000e-5 *et seq*. ("Title VII"); 42 U.S.C. § 1983; the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq*. ("ADEA"); and the Arkansas Civil Rights Act, Arkansas Code Annotated §§ 16-123-101 *et seq*. ("ACRA") (*Id*., at 2).  Ms. Roberts seeks in her complaint declaratory, injunctive, and monetary relief against Defendants (Dkt. No. 2, at 1-2).  The Court turns to examine each pending motion.


## II.     Motion For Leave To Amend Complaint

In her motion for leave to amend the complaint, Ms. Roberts requests leave to amend her complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure to add two defendants, Scott

Stanger and Michelle Young-Hobbs.  Ms. Roberts asserts that Mr. Stanger and Ms. Young-Hobbs were involved in the decision to terminate her but that she did not discover that information until depositions held on June 30, 2021 (Dkt. No. 18, ¶¶ 4, 5, 7-8).  In her proposed amended complaint, Ms. Roberts also seeks to assert a hostile work environment claim for the first time.  She states that she "reported that she was fearful because of the 'hostile' work environment she was required to work in as a result of Rodgers' threats and actions" and that "she reported the threats to McKinnon, Stanger, and Young-Hobbs, base attorneys, and base police" but was "told that it was her word against Rodgers' word and that essentially nothing could be done." (Dkt. No. 18-1, ¶ 11).  Ms. Roberts asserts that Mr.  McKinnon, Mr. Stanger, and Ms. Young-Hobbs dismissed her claims and advised her to "train" Mr. Rodgers (*Id.*, ¶ 12).

In her complaint and proposed amended complaint, Ms. Roberts provides what she asserts is an illustrative example of defendant Mr. McKinnon's "blatant sexism" in handling of one of her concerns related to Mr. Rodgers (Dkt. No. 1, ¶ 10).  In her proposed amended complaint, Ms. Roberts asserts that Mr. Stanger and Ms. Young-Hobbs were aware of the "blatant sexism and racism pervading AMD's handling of this whole matter." (*Id.*, at 18-1, ¶¶ 11-14).  Ms. Roberts further asserts in her proposed amended complaint that AMD, "by and through the acts and conduct of Defendant McKinnon, Stanger and Young-Hobbs, and with the tacit approval of Defendant Berry, did purposefully retaliate against Plaintiff Roberts for her attempts to assert her right to be free of discrimination on the bases of race, sex and age in violation of Title VII, the ADEA, Arkansas's Civil Rights Act and the Constitution of the United States." (*Id.*, ¶ 19(b)).

Ms. Roberts asserts that Defendants will not be prejudiced by the granting of the motion for leave to file amended complaint because Defendants filed a motion to continue the dispositive motions

3

deadline and the scheduled jury trial, which the Court granted (Dkt. No. 18, ¶ 15). Defendants oppose the motion (Dkt. No. 26).

### A.   Legal Standard

Ms. Roberts moves for leave to amend her complaint pursuant to Federal Rule of Civil Procedure 15, which provides that courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). While there is no absolute or automatic right to amend, under the liberal amendment policy of Rule 15(a), "denial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated." *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987)).

### 1.   Good Cause

Under Federal Rule of Civil Procedure 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." Rule 16(b)'s "good cause" standard "governs when a party seeks leave to amend a pleading outside of the time period established by a scheduling order, not the more liberal standard of Rule 15(a)." *Hartis v. Chi. Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012) (quoting *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008)). Eighth Circuit precedent establishes that, "[i]f a party files for leave to amend outside of the court's scheduling order, the party *must* show cause to modify the schedule." *Sherman,* 532 F.3d at 709 (emphasis in original) (quoting *Popoalii v. Corr. Med. Servs.,* 512 F.3d 488, 497 (8th Cir. 2008)). The "primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the [scheduling] order's requirements." *Bradford v. DANA Corp.*, 249 F.3d

807, 809 (8th Cir. 2001) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)).

"The moving party fails to show good cause when there has been 'no change in the law, no newly discovered facts, or any other changed circumstance . . . after the scheduling deadline for amending pleadings.'" *Powell v. Camping World RV Sales LLC*, No. 4:13-cv-00195 KGB, 2014 WL 5311525, at *5 (E.D. Ark. Oct. 16, 2014) (quoting *Hartis*, 694 F.3d at 948). "[T]he failure to recognize the need for amended claims at an earlier date [does] not constitute good cause to excuse the untimeliness of [a] motion to amend." *Schenk v. Chavis*, 259 F. App'x 905, 908 (8th Cir. 2008); *see also Davis v. City of St. John*, 182 F. App'x 626, 627 (8th Cir. 2006) (affirming denial of motion for leave to amend where "[a]lmost all of the information that the [plaintiffs] sought to add to their complaint had been in their possession well before the suit began"). However, good cause may be shown when plaintiff first discovered facts supporting the proposed amended complaint after the amendment deadline expired. *See Powell*, 2014 WL 5311525, at *5; *cf. Trim Fit, LLC v. Dickey*, 607 F.3d 528, 532 (8th Cir. 2010) (upholding district court's denial of motion to amend complaint since the need to develop additional facts in order to support new claim at late stage in the proceedings would have prejudiced defendant).

### 2.    Prejudice

As mentioned above and relevant here, the Court should consider whether the grant of a motion for leave to file an amended complaint would prejudice the nonmoving party. *See Doe v. Cassel*, 403 F.3d 986, 991 (8th Cir. 2005) ("Delay alone is not enough to deny a motion to amend; prejudice to the nonmovant must also be shown." (quoting *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 841 (8th Cir. 2004))). For example, "[m]otions that would prejudice the nonmoving party by 'requiring a re-opening of discovery with additional costs, a significant postponement of the trial,

and a likely major alteration in trial tactics and strategy' are particularly disfavored." *Kozlov v. Associated Wholesale Grocers, Inc.*, 818 F.3d 380, 395 (8th Cir. 2016) (quoting *Steir v. Girl Scouts of the U.S.A.*, 383 F.3d 7, 12 (1st Cir. 2004)); *see also Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir. 2000) (noting that prejudice can come in the form of "the burdens of additional discovery and delay to the proceedings").   Additionally, prejudice can be found in "forcing [a party] to re-litigate the dispute on new bases . . . and to incur new rounds of additional and costly discovery, and depriving it of the meaningful value of obtaining summary judgment." *Kmak v. Am. Century Cos., Inc.*, 873 F.3d 1030, 1035 (8th Cir. 2017) (quoting *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 774 (7th Cir. 1995)).

The Court notes that "[a]ny prejudice to the nonmovant must [also] be weighed against the prejudice to the moving party by not allowing the amendment." *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998) (citing *Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 644 F.2d 690, 694 (8th Cir. 1981)).   However, the Court need "not consider prejudice [to the nonmovant] if the movant has not been diligent in meeting the scheduling order's deadlines." *Kmak*, 873 F.3d at 1034 (quoting *Hartis*, 694 F.3d at 948).

### 3.   Futility

Additionally, "[a] district court's denial of leave to amend a complaint may be justified if the amendment would be futile." *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018) (quoting *Geier v. Mo. Ethics Comm'n*, 715 F.3d 674, 678 (8th Cir. 2013)).   "Denial of a motion for leave to amend on the basis of futility 'means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.'" *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (quoting *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir.

2008)).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

"While a complaint attacked by a [Federal] Rule [of Civil Procedure] 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (alteration in original) (citations omitted).  "[T]he complaint must contain facts which state a claim as a matter of law and must not be conclusory."  *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 627 (8th Cir. 1999) (citing *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995)).  "When ruling on a motion to dismiss, the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party."  *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996)).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

### B.  Analysis

Ms. Roberts notes that under the liberal amendment policy of Rule 15(a) of the Federal Rules of Civil Procedure "leave [to amend] shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  In response, Defendants assert that the Court should deny Ms. Roberts' motion

for leave to amend complaint because Ms. Roberts' amendments would be futile and would cause them undue prejudice (Dkt. No. 26, at 4-10).  The Court concludes that Defendants have not demonstrated the sort of "undue delay . . . on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party" that would justify denying Ms. Roberts' motion for leave to amend her complaint under the facts and circumstances of this case. *Roberson*, 241 F.3d at 995.

### 1.      Good Cause

The Court's final scheduling order permitted the parties to seek leave to amend pleadings no later than December 1, 2020 (Dkt. No. 8-1, ¶ 2).  Ms. Roberts filed her motion seeking leave to amend her complaint on July 3, 2021, to add a hostile work environment claim and two defendants who were not included in her initial complaint (Dkt. No. 18).  Defendants maintain that Ms. Roberts also seeks to assert for the first time individual capacity claims (Dkt. No. 26, at 2 n.1).

Ms. Roberts asserts that the information included in her proposed amended complaint was discovered during depositions taken on June 9, 10, and 30, 2021 (Dkt. No. 18, ¶ 10).  Ms. Roberts asserts that the depositions during which she discovered this information were delayed due to the COVID-19 pandemic and Major General Berry's obligations during the Arkansas Legislative Session (*Id*., ¶ 2).  Defendants do not dispute these assertions.  Ms. Roberts also maintains that Defendants will not be prejudiced because Defendants intend to file a motion to continue the dispositive motions deadline and jury trial (*Id*., ¶ 15).  The Court granted Defendants' motion to extend the dispositive motions deadline and continue the trial date (Dkt. No. 25).  Accordingly, the Court finds, based on the record before it, that there is good cause to amend the Court's scheduling order.  *See Powell*, 2014 WL 5311525, at *5 (good cause may be shown when plaintiff

first discovered facts supporting the proposed amended complaint after the amendment deadline expired).

### 2.    Prejudice

In her motion for leave to amend complaint, Ms. Roberts states that she moved for leave to file the proposed amended complaint after she discovered, through depositions, that Mr. Sanger and Ms. Young-Hobbs were involved in the decision to terminate her (Dkt. No. 18, ¶¶ 8-11).  She asserts that the proposed amended complaint "seeks to conform to the testimony produced at the June 2021 depositions." (*Id*., ¶ 11).  Ms. Roberts contends that the motion is made in good faith and not for the purpose of undue delay or hardship and that Defendants would not be prejudiced by the granting of the motion because Defendants indicated they were filing a motion to extend the motions deadline and the jury trial that had been set for August, 2021 (*Id*., ¶ 15).

By the time Defendants responded to Ms. Roberts' motion for leave to file proposed amended complaint, the Court had granted Defendants' motion to extend time, removed the case from the August 9, 2021, trial calendar, and extended the dispositive motions deadline.

Defendants assert in their response to the motion for leave to amend that, because Ms. Roberts' proposed amended complaint involves adding new parties as well as new theories of relief, it would require reopening discovery and would prejudice Defendants in preparing their dispositive motion (Dkt. No. 26, at 8).  Defendants assert that they have not been afforded the opportunity to propound any questions to Ms. Roberts, throughout discovery, related to her theory about hostile work environment and that they will be prejudiced as a result.  The Court finds that, while Defendants may be inconvenienced by the Court granting Ms. Roberts' motion for leave to amend, the Court is being asked in these motions to rule on pending motions to compel that may alter the course of discovery in this case regardless.  Given the status of this matter, Defendants

may file a motion to reopen discovery or opt to refile their dispositive motions in order to alleviate any potential prejudice that may result from the proposed amendment.

### 3.    Futility

Defendants assert that the Court should deny Ms. Roberts' motion for leave to amend complaint because the proposed amendments would be futile.  As set forth below, however, Ms. Roberts' proposed amended complaint raises at least two claims that the Court cannot find, at this stage, are futile.

### a.    Official Capacity Claims

Defendants contend that it would be futile to permit Ms. Roberts to amend her complaint to raise official capacity claims against Mr. Stanger and Ms. Young-Hobbs under the ADEA, § 1983, and the ACRA because the claims are barred by sovereign immunity (Dkt. No. 26, at 5-6). The Eleventh Amendment protects states from suits brought by citizens.  U.S. Const. amend. XI. This protection extends to suits against a state's departments and agencies.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  State officials acting in their official capacities are entitled to sovereign immunity when plaintiffs seek retroactive monetary relief which would be "paid from public funds in the state treasury[.]"  *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). Ms. Roberts' claims under the ADEA, § 1983, and the ACRA that seek *monetary damages* against Mr. Stranger and Ms. Young-Hobbs in their official capacities may be barred by sovereign immunity. *Bunch v. Univ. of Arkansas Bd. of Trustees*, 863 F.3d 1062, 1068 (8th Cir. 2017) ("claims under the ADA, the ADEA, and 42 U.S.C. §§ 1981 and 1983 are barred under the doctrine of sovereign immunity"); *Whitten v. Ark. Dep't of Human Servs.*, 2 Fed. App'x. 595, 597 (8th Cir. 2001) (recognizing Arkansas' immunity under ADEA).

Ms. Roberts' ADEA and ACRA claims against Mr. Stanger and Ms. Young-Hobbs in their official capacity seeking *prospective injunctive relief*, however, are not barred by sovereign immunity, and Ms. Roberts may pursue such relief to prevent ongoing violations of federal law. *See Ex parte Young*, 209 U.S. 123, 159–60 (1908); *Bass v. Univ. of Arkansas at Pine Bluff*, No. 5:12-CV-00286-KGB, 2014 WL 4630459, at *9 (E.D. Ark. Sept. 16, 2014) ("Courts in this circuit, including our own, have found prospective injunctive relief available to plaintiffs who brought ADEA claims against state officials in their official capacities.") (citing *Drye v. Univ. of Ark. for Med. Sciences ex rel. Univ. of Ark. Bd. of Trs.,* No. 4:09CV00922 JLH, 2011 WL 288564, at *1 (E.D. Ark. Jan. 27, 2011) (citations omitted)); *Jackson v. Univ. of Ark. for Med. Scis.,* No. 4:08CV04234, 2009 WL 890518, at *1–2 (E.D. Ark. Mar. 31, 2009) (finding that, although the Eleventh Amendment barred the plaintiff's ADEA, ACRA, and ADA claims for monetary damages for wrongful termination, plaintiff's claims for prospective injunctive relief against the public officials in their official capacity remained).

The Court also declines to find that Ms. Roberts' claims for injunctive relief under § 1983, as to the individual Defendants in their official capacities, would be futile. When a state official is sued for injunctive relief, that official "would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the state.'" *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) (quoting *Kentucky v. Graham*, 473 U.S. 159, 167, n.14 (1985)). In her proposed amended complaint, Ms. Roberts alleges sufficiently that Mr. Stanger and Ms. Young-Hobbs violated her constitutional rights by subjecting her to discrimination in violation of § 1983. Ms. Roberts' proposed amended complaint seeks prospective relief in that she seeks to be "reinstated to her position" (Dkt. Nos. 1, at 9; 18-1, at 10).

To the extent that Ms. Roberts seeks prospective injunctive relief against Defendants in their official capacity, her claims are not futile.

**b.**     **Individual Capacity Claims Under 42 U.S.C. § 1983**

Ms. Roberts' proposed amended complaint raises individual capacity claims against Mr. Stanger and Ms. Young-Hobbs under 42 U.S.C. § 1983.  Defendants assert these claims are futile because Title VII provides the "exclusive remedy" for violation of its terms and the "comprehensive remedial scheme in Title VII bars individual-capacity claims against public officials under § 1983 based on alleged violations of rights created by Title VII." (Dkt. No. 26, at 6 (citing *Henley v. Brown*, 686 F.3d 640-43 (8th Cir. 2012))).  Defendants assert that, because Ms. Roberts' § 1983 claims against the individual Defendants are based on the same conduct underlying the Title VII claims, they must be dismissed (*Id*., at 6-7).

The Court finds, however, that the individual capacity § 1983 claims Ms. Roberts raises in her proposed amended complaint against Mr. Stanger and Ms. Young-Hobbs are not futile because she asserts claims to be free from retaliation for her exercise of rights guaranteed her under the Constitution of the United States, "specifically her right to speak out on matters of public concern" as well as claims that Mr. Stanger and Ms. Young-Hobbs violated the rights guaranteed her under the Constitution of the United States, that are separate and apart from her claims of violations of rights created by Title VII (Dkt. No. 18-1, at 2).   *See Henley v. Brown*, 686 F.3d 634, 642 (8th Cir. 2012) ("while our holding in *Foster* precludes a plaintiff from asserting violations of rights created by Title VII as the basis for a section 1983 action, it does not—by any means—preclude a plaintiff from utilizing section 1983 as a vehicle for vindicating rights independently conferred by the Constitution."); *Williams-Raynor v. Arkansas Dep't of Health*, No. 4:16CV00761 JLH, 2017 WL 1017636, at *8 (E.D. Ark. Mar. 15, 2017) (claims of violation of the Constitutional right to be

free of racial discrimination in public employment may be asserted under 42 U.S.C. § 1983 as may claims for a violation of the right to be free from retaliation, which "is clearly established as a first amendment right.") (citations omitted).

### c.    Qualified Immunity

In her proposed amended complaint, Ms. Roberts seeks damages from Mr. Stanger and Ms. Young-Hobbs for racial and gender discrimination under § 1983 and the ACRA.  Defendants argue that these claims are futile because they are entitled to qualified immunity.

With respect to the § 1983 claims, "[t]o prevail at this stage of the proceedings, defendants must show that they are entitled to qualified immunity on the face of the complaint." *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005).  Qualified immunity shields public officials from liability for civil damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "[I]t has been clearly established for many years that the Equal Protection Clause prohibits a State, when acting as an employer, 'from invidiously discriminating between individuals or groups' based upon race." *Murphy v. State of Arkansas*, 127 F.3d 750, 755 (8th Cir. 1997) (quoting *Washington v. Davis*, 426 U.S. 229, 239 (1976)).  Because the right to be free from discrimination based on race and gender are clearly established constitutional rights about which a reasonable person would have known, and because Ms. Roberts' proposed amended complaint alleges that Mr. Stanger and Ms. Young-Hobbs's actions were discriminatory, Ms. Roberts' claims for damages due to alleged racial and gender discrimination are not futile due to qualified immunity at this stage of the proceeding.

With respect to immunity from ACRA claims, the Eighth Circuit Court of Appeals examined controlling law in *Thurairajah v. City of Fort Smith, Arkansas*, 3 F.4th 1017 (8th Cir.

2021).  At this stage, as neither party addressed this controlling law, the Court declines to find futile Ms. Roberts' proposed amended claims.

### C.   Conclusion

For the above reasons, the Court grants Ms. Roberts' motion for leave to amend complaint (Dkt. No. 18).  The Court directs Ms. Roberts to file her amended complaint within the 14 days from the entry of this Order.

### III.   Motion to Compel Defendants To Produce Certain Documents

Ms. Roberts moves to compel, in part, a response to the following request for production of documents:

> **REQUEST FOR PRODUCTION NO. 4:**  Please produce a) a complete copy of AMD's personnel file on Defendant Mark McKinnon, b) the personnel files of all AMD officials and/or employees identified in your Response to Interrogatory No. 3, below, and c) the personnel files of all past or present AMD officials/and or "personnel file" is intended to include virtually every writing, document or data and/or employee, including, but not limited to disciplinary actions and employee evaluations.  If Defendants think it necessary undersigned counsel is willing to enter into a reasonable protective order.

(*Id.*, ¶ 2).

> Defendants responded as follows:

> **RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**  Objection.  This request seeks documents not relevant to the claims at issue in this case, which exceed the scope of the EEOC charges in this case, and which contain personal and sensitive information that would invade the privacy of the individual.  In light of these issues the request is not proportional to the needs of this case and is overly broad and unduly burdensome.  Additionally, the requested timeframe is not reasonable in light of the claims at issue in this case.

(*Id.*).  In her motion, Ms. Roberts states that she asked specifically in Request No. 4 that Defendants produce personnel files of AMD employees James Wiggins, Mike Wrobleski, Johnny Rogers, Michelle Young-Hobbs, Bill Lewis, John Frost, and Scott Stranger, "all AMD employees identified by Defendants as having knowledge of the allegations in the complaint." (*Id.*, ¶ 3).  Ms.

Roberts asserts the "personnel files are relevant to demonstrate how other employees were potentially treated differently related to disciplinary issues, e.g.." (*Id*.).   Ms. Roberts claims that she sent counsel for Defendants an email in an attempt to resolve the issue in good faith, but Defendants responded that they maintained their objection even in the light of an agreement to enter into a protective order (*Id*., ¶ 4).

In addition to a response to the request for production of documents, Ms. Roberts also seeks in her motion to compel the "personnel file for Mark McKinnon, Johnny Rogers, and Mike Wrobleski.  Also, any information indicating termination and hiring of employees at AMD from July 2014 to July 2019, including but not limited to, race, DOB, and gender." (Dkt. No. 20, ¶ 8). Ms. Roberts states that Ms. Young-Hobbs was asked to produce this information at her deposition for which her counsel accepted service of a subpoena (*Id*., ¶¶ 6, 8).  Ms. Roberts maintains that there was no objection made to the subpoena, but Ms. Young-Hobbs stated at her deposition that her "in house" attorney told her not to bring the documents (*Id*., ¶ 9).  Finally, Ms. Roberts also seeks information that deponents Mr. Frost and Mr. Stranger agreed to produce during their depositions on June 30, 2021, but have not produced (*Id*., ¶ 10).

In response to Ms. Roberts' motion to compel, Defendants state that they maintain their objections to Ms. Roberts' Request for Production No. 4 (Dkt. No. 27, at 2).  Defendants maintain that Ms. Roberts' request for multiple personnel files of AMD employees who had been terminated from AMD over the previous ten years was overly broad, unduly burdensome, and the timeframe is unreasonable (Dkt. No. 27, at 2).  Defendants assert that they only had three days to respond to documents requested during the depositions of Mr. Frost and Mr. Stanger on June 30, 2021, before Ms. Roberts filed her motion to compel (*Id*.).  Defendants assert that Ms. Roberts has not identified what is contained in the personnel file of Defendant Mr. McKinnon that is relevant and "what

15

information Plaintiff believed was contained in the personnel file that would possibly serve the claims in this case." (*Id.*, at 3).  Defendants state that, because Ms. Roberts did not respond to a letter offering for Ms. Roberts to identify relevant information in response to their objection, Defendants believe the Court should deny Ms. Roberts' motion to compel Mr. McKinnon's personnel file (*Id.*).

Federal Rule of Civil Procedure 26(b)(1) provides that a party may obtain discovery regarding nonprivileged material that is "relevant to any party's claim or defense and proportional to the needs of the case."  Courts in the Eighth Circuit have found that individuals have a heightened privacy interest in a personnel file, but limited disclosure is nonetheless warranted when it is not unreasonable under the circumstances.  *Kampfe v. Petsmart, Inc.*, 304 F.R.D. 554, 559 (N.D. Iowa 2015) ("[T]he interest of litigants in discovering relevant information pursuant to Rule 26 must outweigh the general privacy interest that an employee has in the contents of his or her employment file.  That is, so long as the requesting party demonstrates a legitimate need, the information must be produced."); *Nuckles v. Wal-Mart Stores, Inc.*, 2007 WL 1381651, at *1 (E.D. Ark. May 10, 2007) ("A proper balance between the privacy interests of non-parties, and the discovery interests of a litigant, assures that only relevant portions of the personnel files are open to disclosure."); *Christensen v. Quinn*, 2013 WL 1702040, at *8 (D. S.D. Apr. 18, 2013) ("[T]he right to privacy regarding personnel files is not absolute. It must be balanced against the need by [the requesting party] to have the information.").

Ms. Roberts states that she is willing to enter into a reasonable protective order to address the privacy interests of non-parties in order to review the personnel files which may lead to relevant information relating to her discrimination claims (Dkt. No. 20, at 1-2).  Accordingly, the Court grants Ms. Roberts' motion to compel the personnel files of AMD employees James Wiggins,

Mike Wrobleski, Johnny Rogers, Michelle Young-Hobbs, Bill Lewis, John Frost, Scott Stranger, and Mark McKinnon.  The parties shall have 14 days from the date of this Order to negotiate in good faith and propose to the Court a joint protective Order.  If the parties cannot reach agreement on a joint protective Order, both parties may submit a proposed protective Order to the Court within 14 days from the date of this Order.  Defendants shall have 14 days from the date of the Court's entry of a protective Order to produce the personnel files to Ms. Roberts.

As part of a subpoena for the deposition of Ms. Young-Hobbs, Ms. Roberts sought information indicating termination and hiring of employees at AMD from July 2014 to July 2019, including but not limited to, race, DOB, and gender (Dkt. No. 20, at ¶ 8).  Defendants object that Ms. Roberts did not attempt to consult in good faith regarding this request prior to filing her motion to compel but that, even if Ms. Roberts had attempted to consult in good faith, Defendants maintain their objection to the request on grounds that the request is unduly burdensome and overly broad (Dkt. No. 27, at 5).  Defendants state that "their system is not capable of capturing snapshots at any given point in time in the manner requested by Plaintiff.  As a result, producing the requested information would require that Defendants review the personnel file of every employee who has begun and left employment, whether voluntarily or involuntarily of the DOM since July 2014" in order to ascertain the information requested (Dkt. No. 27, at 5).  Defendants assert that such discovery is overly broad, unduly burdensome, and not tailored to meet the needs of discovery in this case.  Based on Defendants' assertion and the record before the Court, the Court sustains Defendants' objection to Ms. Roberts' request for this information.

Defendants object to Ms. Roberts' motion to compel documents identified by Mr. Frost and Mr. Stanger during their depositions because they had not had an opportunity to compile, review, and confer with counsel for Ms. Roberts regarding the documents prior to Ms. Roberts

filing her motion to compel the documents.  The Court agrees that Ms. Roberts' motion to compel the documents identified at Mr. Frost and Mr. Stanger's depositions was premature given that the depositions concluded on June 30, 2021, and the motion to compel was filed on July 3, 2021. Accordingly, the Court denies without prejudice Ms. Roberts' motion to compel documents identified by Mr. Frost and Mr. Stanger during their depositions.  Within 14 days of the entry of this Order, Defendants shall provide Ms. Roberts with any objections they have to producing the documents identified at Mr. Frost and Mr. Stanger's depositions.  Ms. Roberts may renew her motion to compel if the parties are unable to reach an agreement on the production of the documents.

The Court grants, in part, and denies, in part, Ms. Roberts' motion to compel Defendants to produce certain documents (Dkt. No. 20).  The Court denies Ms. Roberts' request for attorneys' fees and expenses (*Id*.)

## IV. Defendants' Motion To Compel

In their motion to compel, Defendants assert that they propounded interrogatories to Ms. Roberts that asked the following:

a.  Specify by category and amount the economic damages Plaintiff claims to have sustained, stating in detail the method by which she computed the damages (Interrogatory No. 6).

b.  Specify by category and amount the non-economic damages Plaintiff claims to have sustained, stating in detail the method by which she computed the damages (Interrogatory No. 7).

c.  State the total amount of income, benefits, or earning capacity she claims to have lost and the amount of any cost, expense, or other outlay from the date she began employment with Defendants to present, how the amount was calculated, and the source thereof (Interrogatory No. 8).

d.  Whether Plaintiff had made any social media postings, recordings, notes, memoranda, word processor or computer entries, letters, entries into diaries/journals, notes on calendars, notes in date books, or prepared any other type

of document whatsoever that contains information pertaining to the allegations in the Complaint (Interrogatory No. 10).

(Dkt. No. 22, ¶ 3).

In their motion to compel, Defendants maintain that Ms. Roberts failed to submit a verification with her responses (*Id.*, ¶ 4). Defendants complain that, in response to Interrogatory Nos. 6 and 7, Ms. Roberts failed to specify by category and amount the economic and non-economic damages she claims and to state the method by which she calculated damages (*Id.*, ¶ 5). Defendants assert that in response to Integratory No. 8, Ms. Roberts failed to specify the total amount of income, benefits, and earning capacity she claims to have lost and how that amount was calculated (*Id.*, ¶ 6). Defendants state that, in response to Interrogatory No. 10, Ms. Roberts objected on the basis of attorney-client privilege, stated that she had not made any social media postings, but also failed to state whether she possessed any of the remaining items identified in Interrogatory No. 10 (*Id.*, ¶ 7).

In her response to the motion to compel, Ms. Roberts states that she was unaware of any deficiency with her response to Interrogatory No. 7 until Defendants filed their motion to compel; that she supplemented her responses with a verification; and that Defendants "had an opportunity to ask Mrs. Roberts any questions about her answers on June 10, 2021, when Mrs. Roberts answered Defendants' questions during her deposition." (Dkt. No. 28, at ¶¶ 3-4). Ms. Roberts states that she answered the questions to the best of her ability and indicated the damages she sought, including an amount that increases each day that she stays unemployed; that Defendants had an opportunity to ask her questions about her responses during her deposition; and that she supplemented her responses by providing a copy of one of her last renumeration statements dated June 21, 2019 (*Id.*, ¶¶ 5-6). Ms. Roberts maintains that there are no other items that "require affirmative action with respect to Interrogatory No. 10" (*Id.*, ¶ 7).

In their motion to compel, Defendants assert that they requested that Ms. Roberts produce the following documents:

a.   All documents that support Plaintiff's claim for economic damages (Request for Production No. 4);

b.   All documents that support Plaintiff's claim for noneconomic damages (Request for Production No. 5);

c.   All documents that support Plaintiff's claim for loss of income, benefits, earning capacity cost, expense, or other outlay (Request for Production No. 6);

d.   All documents evidencing the Plaintiff's income or sources of income or sources of income for the years 2010 to the present, including federal and state income tax returns, pay stubs, 1099 forms, and W-4 forms (Request for Production No. 11); and

e.   All documents, including statements or records, identified in response to Interrogatory No. 10 (Request for Production No. 7).

(Dkt. No. 22, ¶ 8).

Defendants assert that, in response to Requests for Production Nos. 4, 5, and 6, Ms. Roberts did not produce any documents, did not object to the requests, and indicated she would supplement her responses (*Id.*, ¶ 9). Defendants contend that Ms. Roberts has not supplemented her responses despite their attempts to confer in good faith about supplementing the responses (*Id.*). Defendants maintain that Ms. Roberts objected to Request for Production No. 11 on grounds that it was overly broad, unduly burdensome, and not likely to lead to discoverable information (*Id.*, ¶ 10). Ms. Roberts stated that, subject to the objection, she had worked full-time at AMD for over 30 years and that payroll records were in the custody and care of AMD. Ms. Roberts did not produce any documents in response to the request, and Defendants assert she "failed to comply with the request in full." (*Id.*). Defendants contend that Ms. Roberts objected to Request for Production No. 7 on the basis of attorney-client privilege, but she also stated that she had not made any postings. Defendants state that Ms. Roberts failed to respond to the remainder of the information contained

20

in the request and assert that, based upon information obtained from Ms. Roberts' unemployment hearing recording, they believe she possesses recordings that may relate to claims in the lawsuit (*Id.*, ¶ 11).   Defendants also believe, based on Ms. Roberts' deposition where she identified a notebook that she kept regarding her employees including Mr. Rogers, that she has a notebook that is responsive that has not been produced (*Id.*).

Ms. Roberts states that Defendants did not make her aware of any issues with her responses to Requests for Production Nos. 4 through7 or Interrogatory No. 10 until they filed their motion to compel (Dkt. No. 28, ¶ 8).  Ms. Roberts contends that she has complied with the requests, she has supplemented her responses to discovery by providing a copy of one of her last renumeration statements dated June 21, 2019, and Defendants had an opportunity to ask her questions about her responses during her deposition (*Id.*, ¶¶ 8-10).  Referring to Request for Production No. 7, Ms. Roberts states that she has searched for "any notes and recordings, and she does not have any notes or recordings that would comply with this request." (*Id.*, ¶ 11).

Defendants also maintain in their motion to compel that they requested that Ms. Roberts execute the following forms or authorizations:

      a.      Arkansas State Police authorization;

      b.      Release of employment information;

      c.      Release for federal income tax returns; and

      d.      Release of education records.

(Dkt. No. 22, ¶ 12).  Defendants assert that Ms. Roberts did not object to the execution of these forms (*Id.*).  Defendants, however, failed to attach the forms to their requests for production of documents (Dkt. No. 22-2, at 18-19).  Defendants contend they have made good faith attempts to confer with counsel for Ms. Roberts regarding execution of the forms (Dkt. No. 22, ¶ 13).

Ms. Roberts argues that the authorization forms were never presented to her in a formal discovery request and states that in a good faith effort she supplemented her responses by providing Defendants a "signed copy of the Arkansas State Police Record Check Request Form, Employment Records Authorization, and Education Records Authorization" (Dkt. No. 28, ¶ 12).  Ms. Roberts continues her objection to the 8821 Tax Information Authorization.  on grounds that the request is overly broad and vague because it is unclear what information Defendants are requesting.  (*Id*.).

Defendants replied to Ms. Roberts' response to the motion to compel (Dkt. No. 29). Defendants state that, in an email dated April 15, 2021, they inquired specifically about supplementing discovery responses to Requests for Production Nos. 4 through 6 and that Ms. Roberts was made aware of the issue with her response to Request for Production No. 7 during her deposition when counsel for Defendants asked that the notebook she testified about during her deposition be produced (Dkt. No. 29, ¶ 1).  Defendants assert that Ms. Roberts waived her objection to the execution of the tax authorization form by not objecting until her response to the motion to compel (*Id*., ¶ 4).  Defendants argue that Ms. Roberts' "income history is relevant to this case because she is claiming damages in the form of 'lost income from June 28, 2019 to present' as well as lost benefits and non-economic damages." (*Id*., ¶ 4).  Defendants acknowledge that Ms. Roberts has produced a copy of one of her last renumeration statements but maintain that she has failed to specify by category the amount of economic and non-economic damages she claims and the method by which she calculated damages (*Id*., ¶ 5).

With respect to Defendants' motion to compel responses to Interrogatory Nos. 6 through 8 and Requests for Production Nos. 4 through 6 related to Ms. Roberts' damages, Ms. Roberts states that she has responded to Defendants' interrogatories to the best of her ability indicating the damages she seeks and an amount that increases each day that she stays unemployed and that her

response to the motion to compel indicates she has now verified her responses to the interrogatories (Dkt. No. 28).   Defendants had an opportunity to depose Ms. Roberts, and Ms. Roberts has an ongoing duty to supplement her discovery responses.  The Court denies Defendants' motion to compel further responses to Interrogatory Nos. 6 through 8 and Requests for Production Nos. 4 through 6.

Regarding Defendants' motion to compel responses to Interrogatory No. 10 and Request for Production No. 7 relating to social media posts, recordings, notes, memoranda, and journal entries, Ms. Roberts responds that she has searched for but "she does not have any notes or recordings that would comply with this request." (Dkt. No. 28, ¶ 7).  Based on the record, the Court denies Defendants' motion to compel responses to Interrogatory No. 10 and Request for Production No. 7.

In Request for Production No. 11, Defendants seek Ms. Roberts' federal and state income tax returns, pay stubs, 1099 forms, and W-4 forms for the years 2010 to the present.  Ms. Roberts objected that the request was "overly broad and burdensome and not likely to lead to discoverable information to the extent it requests tax information for ten years." (Dkt. No. 22-2, at 18).  Counsel for Ms. Roberts later stated in correspondence with counsel for Defendants that he would "see what [he] could do about the forms," which had not been attached to Defendants' original discovery requests (Dkt. No. 22-4, at 1).  In response to the motion to compel, Ms. Roberts objected to the 8821 Tax Information Authorization sent in blank to her by the Defendants because from the face of the document it indicated "[d]on't sign this form unless all applicable lines have been completed."  Ms. Roberts contends that, because none of the blanks on the form were completed to limit the request, the request was overly broad and vague as to what would be requested by Defendants (Dkt. No. 28, ¶ 12).

The Court grants, in part, and denies, in part, the motion to compel Ms. Roberts' response to Request for Production No. 11.  The Court grants Defendants' motion to compel Ms. Roberts' federal income tax returns for the years 2017 to the present and denies Defendants' motion to compel the production of Ms. Roberts' state tax returns and other documents to the extent they are not part of Ms. Roberts' federal income tax returns.  Ms. Roberts may comply with this Order to compel within 14 days of entry of a protective Order by either producing her federal income tax returns from 2017 to the present to Defendants or she may sign the 8821 Tax Information Authorization form authorizing the Defendants to obtain her federal tax information for the years 2017 to the present within 14 days from the entry of this Order.

## V.       Defendants' Motion For Summary Judgment

On August 9, 2021, Defendants moved for summary judgment (Dkt. No. 30).  In an Order dated August 23, 2021, the Court extended the time in which Ms. Roberts had to respond to the motion for summary judgment until 14 days after the Court rules on her pending motion to amend her complaint (Dkt. No. 34).   Because Defendants' motion for summary judgment is directed at Ms. Roberts' initial complaint, the filing of Ms. Roberts' amended complaint moots Defendants' motion for summary judgment.  *Oniyah v. St. Cloud State Univ.*, 655 F. Supp. 2d 948, 958 (D. Minn. 2009) ("[A]s a general proposition, if a defendant files a Motion to Dismiss, and the plaintiff later files an Amended Complaint, the amended pleading renders the defendant's motion to dismiss moot.") (citing *Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 956 (8th Cir. 2002) ("If anything, [plaintiff's] motion to amend the complaint rendered moot [defendant's] motion to dismiss the original complaint."); *Standard Chlorine of Del., Inc. v. Sinibaldi*, 821 F. Supp. 232, 239-40 (D. Del. 1992) (finding that plaintiff's filing of an amended complaint rendered defendant's

motion to dismiss moot)).  Accordingly, the Court denies as moot Defendants' pending motion for summary judgment directed at Ms. Roberts' initial complaint (Dkt. No. 30).

As the Court recognized previously in this Order, Defendants may seek to reopen discovery in this case through the filing of a motion or they may file a motion for summary judgment directed towards Ms. Roberts' operative complaint after the filing of her amended complaint if they choose to do so.  Given the procedural posture of this case, the Court recognizes that Defendants may choose to cite Federal Rule of Civil Procedure 10(c) and incorporate by reference their prior filings, if appropriate.

## VI.  Conclusion

The Court grants Ms. Roberts' motion for leave to amend complaint (Dkt. No. 18).  The Court directs Ms. Roberts to file her amended complaint within the 14 days from the entry of this Order.  The Court grants, in part, and denies, in part, Ms. Roberts' motion to compel Defendants to produce certain documents (Dkt. No. 20).  The Court grants, in part, and denies, in part, Defendants' motion to compel (Dkt. No. 22).  Because the Court grants Ms. Roberts' motion for leave to amend complaint, the Court denies as moot Defendants' motion for summary judgment (Dkt. No. 30).

It is so ordered this 22nd day of February, 2022.

_Kristine G. Baker_
Kristine G. Baker
United States District Judge